DAVID J. REINHARDT, Attorney General, on relation of
Linus B. Rogers,

*vs.*

JEFFERSON D. CHALFANT.

*New Castle, June* 28, 1920.

Information to enjoin obstruction of a highway is properly brought by the Attorney General; the protection of a public right being involved.

That there may be some one responsible for the costs of the cause, a relator with a private interest in the public right is a proper party to an information brought by the Attorney General to enjoin obstruction of a highway.

When the relator to an information brought by the Attorney General to enjoin obstruction of a street conveys away her land, her grantee succeeds to her private and special interest in enforcing the public right, and is properly substituted as relator.

Liberality in the substitution of parties in the interest of justice is excerised in Chancery, especially where the proceeding is an information to enforce a public right.

Where the owner of land divides it into lots and streets, and records the plot, his grantee and subsequent grantees of a lot by deeds describing it as abutting on a street shown on the plot and referring to the plot have a right to use the whole length of the street as a way providing access to the lot, as against such original owner and his grantee of part of the street.

There must be a public right, a public highway, and not a mere private easement in order to maintain an information to enjoin the obstruction of a street brought by the Attorney General on the relation of an owner of land abutting on the street.

By the plotting of land, recording of the plot, and conveyance of lots according thereto abutting on a street shown thereon, the street throughout its length and breadth is dedicated to public uses as a highway.

To establish a street as a highway through a dedication thereof there must be an acceptance, express or implied, of the dedication.

In the absence of action by public authority, the only evidence of acceptance of dedication of a street that can be asserted is public user.

There is no settled standard of the length or character of user necessary to raise an implication of acceptance of a dedication of a street; and ordinarily it is a question of fact for the jury.

A shorter period of user will show an implied acceptance as against a dedicator of a street where removal of an obstruction erected therein by him is sought, than where the object is to enforce a liability on the public for failure to repair the road or perform some other public duty respecting it.

The small number of users is not necessarily determinative against the acceptance by user of dedication of a street, but it is enough that the persons who could naturally be expected to enjoy it have done so at their pleasure.

For purpose of enjoining obstruction by the dedicator the public user shown was *held* sufficient to establish a highway by acceptance of dedication of a street, notwithstanding evidence of trees, shrubbery, and flowers in the bed of part of it.

Revised Code 1915, § 1566, declaring roads theretofore laid out or used as such and maintained by public charge for 20 years to be highway, does not prevent there being a highway by dedication and acceptance by public user.

Revised Code 1915, § 1502, prescribing width of a road improved under the act creating the office of State Highway Commissioners, does not prevent there being a highway of different width by dedication and acceptance by public user.

STATEMENT OF THE CASE. The information was filed for the purpose of enjoining an obstruction of a street in a suburban settlement near Wilmington called Ashley, which so far as appears is unincorporated as a town and unorganized into a municipality.

The Ashley Syndicate, Inc., owning a tract of land laid it out in streets, sub-divided it into building lots, recorded the plot thereof in the Recorder's office, and sold lots in the plotted area. One of the streets shown on the plot was Ashley Place, and resembled the form of a magnet, in that it begins at one point in the southerly side of Maryland Avenue, a public highway of the county, and ends at another point in the same highway, the southerly end of the street being curved and unconnected with any other street or way than Maryland Avenue. From the plot it appears to be a way for passage by it from one part of Maryland Avenue southerly and then around the curved end back into Maryland Avenue to another place. All of the lots abutting on Ashley Place run to the outer edge of Ashley Place. When the tract was bought for development there was, and still, is, at the curved head of the street a large dwelling house, the front of which is about thirty feet south of the nearest part of the southerly and outer curved side of Ashley Place.

After the syndicate had sold, among others in the tract, building lots on both sides of Ashley Place and described in the deeds as abutting thereon and referring to the recorded plot, and identifying the particular lots by numbers corresponding to the lots shown on the plot, the syndicate conveyed to Gertrude R. Nason in 1910 two lots of land. One of the two lots was described as number thirteen as shown on the plot, and was located entirely on the south side of the curved plot of Ashley Place and abutted thereon. The other plot conveyed the bed of Ashley Place at the curved end whereon lot number thirteen abutted, the side lines thereof being extended northerly across Ashley Place. This latter lot was conveyed by the syndicate subject to this restriction:

"And subject also to so much of said last described lot of land as is included within the limits of Ashley Place to the rights, privileges, uses and easements therein given and granted by the said party of the first part."

In 1916 Gertrude R. Nason conveyed the same two parcels of land to the defendant, Chalfant, subject to the same reservations of easements. He knew of the plot before taking title. Alexander P. Eves, prior to the conveyance to Gertrude R. Nason, acquired a lot on the easterly side of Ashley Place, the plot being

referred to in the deed, and later title to the lot passed by his will to his widow, Priscilla Eves.

Following attempts by owners of lots on Ashley Place to grade the curved end of Ashley Place, the defendant obstructed the street by a wire fence and otherwise so that it was and is now impossible to pass freely from Maryland Avenue southerly by Ashley Place back into Maryland Avenue. On the relation of Priscilla Eves the Attorney General filed an information in the nature of a bill to enjoin the further continuance of the obstruction of Ashley Place. Subsequently Priscilla Eves conveyed her lot to Linus B. Rogers, and he was by order of the Chancellor substituted as relator for her.

Evidence was presented on both sides as to the user made of the street, the dispute being as to the southerly or curved end only, it being admitted that both the easterly and westerly branches were open and freely used by the general public, as well as by all owners of lots abutting on Ashley Place. The evidence produced on behalf of the relator showed that vehicles had at various times, and with some frequency, passed prior to the obstruction from Maryland Avenue by either branch along the whole course of the street back into Maryland Avenue, and since the defendant acquired his land. For defendant it was shown that until his neighbors attempted to fully open up the curved end of the street by grading, cutting down trees and shrubbery, that part of the way was so obstructed by shrubbery, flowers, and trees as to be impossible of passage by a vehicle, though open enough to permit passage by pedestrians.

It was contended by the defendant that as the original relator, Eves, had parted with her land since the filing of the information, there remained no person who as a party to the cause had any private interest in the cause of action, and that the substitution of a new relator was ineffective.

*David J. Reinhardt, Attorney General*, and *Charles B. Evans*, for relator.

*Herbert H. Ward* and *William F. Smalley*, for defendant.

THE CHANCELLOR. The information involved the protection of a public right and, therefore, was properly brought by the At-

torney General. A relator with a private interest in the public right was a proper party in order that there be some one responsible for costs of the cause. When this original relator conveyed away . her land her grantee by succeeding to her private and special interest in enforcing the public right was properly substituted as relator. Liberality in the substitution of parties in the interest of justice has always been exercised in Chancery. *Satterthwait v. Marshall,* 4 *Del. Ch.* 337, 357. Especially is this true where the proceeding is an information to enforce a public right such as the one in question in the present case.

It is clear that the original relator, as well as her grantee, the substituted relator, had a right to the use of the whole of Ashley Place as a way providing access to the lot of land fronting on Ashley Place, and that the defendant had no right to obstruct it. This same right exists in owners of all other lots abutting on Ashley Place, and probably in owners of other lots in the tract laid out as a town by the Ashley Syndicate. This right results from the recording of the plot. *Ogle v. Philadelphia, etc., Co.,* 3 *Houst.* 267, 272; *Poole v. Greer,* 6 *Pennewill,* 220, 65 *Atl.* 767; *Fulton v. Town of Dover,* 6 *Del. Ch.* 1, 6 *Atl.* 633; *Downey v. Hood,* 203 *Mass.* 4, 89 *N. E.* 24.

Furthermore in this particular case the grantor of the defendant by the conveyance from the Ashley Syndicate acquired title expressly subject to the right of the user of Ashley Place by all persons to whom such right was given as the result of the recording of the plot; and the defendant took title to his land subject to this easement and the burden thereof.

But the question here does not involve distinctly private rights to the easement, but to the invasion of the public rights based on the obstruction of what is asserted to be a public highway or street, for the information is brought by the Attorney General on the relation of an owner of land abutting on the street, and is, therefore, the assertion of a public right.

The issue, then, is whether Ashley Place was and is a public highway. There has been no evidence of any act of the public authorities creating or recognizing Ashley Place as a highway. The Levy Court, the body having jurisdiction of the highways of the county, has not acted and the territory included in the plot

of Ashley Syndicate has not been formed into a municipality so far as appears. By the recording of the plot and the wording of the conveyances by Ashley Syndicate of land in the plot, and particularly by conveyances of land abutting on Ashley Place, that street throughout its length and breadth from and into Maryland Avenue was dedicated to public uses as a street or highway. *Fulton v. Town of Dover*, 8 *Houst.* 105, 6 *Atl.* 633, 12 *Atl.* 394, 31 *Atl.* 974 (*Court of Errors and Appeals*); *State v. Southard*, 6 *Pennewill*, 247, 66 *Atl.* 372. But there must be an acceptance, express or implied, of such dedication, in order to establish the street as a highway. *Fulton v. Dover, supra.*

In the absence, as here, of an express acceptance by any public authority or governmental body, or any act done by it or them impliedly accepting such dedication, as, for instance, assuming control over, or improving it, the only evidence of acceptance which can be asserted is that resulting from public user. Though elsewhere it is not so established, it is established in Delaware, and probably by the weight of authority elsewhere, that acceptance of a dedication of land for a highway may be implied from long user of the way by the public as of right. In the earlier cases in Delaware a complete dedication was considered a necessary result of plotting streets and selling lots in the plotted tract. *State v. Reybold*, 5 *Har.* 484, 486; *Ogle v. Philadelphia, etc., Co.*, 3 *Houst.* 267, 272; *Fulton v. Dover*, 6 *Del. Ch.* 1, 6 *Atl.* 633; though in the last cited case the Chancellor did not apply the principle. In *Fulton v. Dover*, 8 *Houst.* 78, 6 *Atl.* 633, 12 *Atl.* 394, 31 *Atl.* 974, on appeal, the Court of Errors and Appeals held that public user was also necessary to effect a complete dedication, and found no evidence of such user in fact, and on the contrary such conditions as excluded user, the premises being used for agricultural purposes.

The reason for this requisite of acceptance, is that the duties and responsibilities of the public authorities respecting highways should not be imposed upon them unless the public needs require, and user is one of the tests of such needs. There is no settled standard of the length or character of the user to raise an implication of acceptance, and ordinarily it is a question of fact rather than of law, and so one to be determined by a jury under the

varying circumstances of each case. *Riley v. Hammel*, 38 *Conn.* 574; and cases cited in note in 18 *L. R. A.* 511.

The character and length of user varies according to the circumstances under which the effect of such user is considered. As against the dedicator, or any one taking title under him, a shorter period of user would show an implied acceptance than if the object of the suit was to enforce a liability on the public for the failure to repair the road, or perform some other public duty respecting it as a public way. So here, where the object of the suit is the removal of an obstruction in a plotted street, erected by the grantee of the dedicator, the length of user would not be important, and it need not be a long term. *Riley v. Buchanan*, 116 *Ky.* 625, 76 *S. W.* 527, 63 *L. R. A.* 642, 3 *Ann. Cas.* 788; *Adams v. Iron Cliffs Co.*, 78 *Mich.* 271, 44 *N. W.* 270, 18 *Am. St. Rep.* 441.

In the case of *Phillips v. City of Stamford*, 81 *Conn.* 408, 71 *Atl.* 361, 22 *L. R. A.* (*N. S.*) 1114, the Court on ample authority took the ground that where the public by the acts of those most likely to be cognizant of a proffered gift of a way for public use has shown its recognition of its usefulness and its approval of the gift by any variety of recognized acts and conduct, the conditions of acceptance are fully satisfied. This same cited case shows that the absence of grading, improving or repairing the way by the public authorities is not determinative against its acceptance by user as a public way. See also *Reading v. Telfer*, 57 *Kan.* 798, 48 *Pac.* 134, 57 *Am. St. Rep.* 355. Nor is the small number of users necessarily a determining feature, and it is sufficient to show that the persons who could naturally be expected to enjoy it have done so at their pleasure. *Phillips v. City of Stamford*, cited above.

Applying these principles to the case before the Court, it is clear that there has been in this case, and for the purposes of this case, sufficient evidence of public user as to constitute the whole of Ashley Place as a public way, and to establish the right of the relator and all others in like relation to the premises to the free use of the whole of such street as laid down on the recorded plot. Notwithstanding the evidence as to the trees, shrubbery and flowers in the bed of the street adjoining the land of the defendant, it did appear affirmatively by the testimony of several witnesses that there was this user by vehicles, and it was certainly open

freely to such use by pedestrians. Such user perfected the implied dedication by plotting and selling lots in the plotted tract, and, therefore, the defendant had no right to obstruct by artificial barriers the use of the whole of Ashley Place.

Certain statutes were cited by the defendant to show that Ashley Place did not comply therewith, and so was not a legal public or private road. But section 1566 of the Revised Code of 1915 does not apply to roads created by private dedication. *State v. Southard,* 6 *Pennewill,* 247, 249, 66 *Atl.* 372. Section 1502 of the Revised Code of 1915 prescribed the width of a road improved under the act creating the office of State Highway Commissioners, and does not apply to a dedicated street not improved at public expense under the act. None of the other provisions of law referred to by the solicitors for the defendant have any bearing on the question raised and decided here, for the question here is not whether Ashley Place complies with all the statutory requirements as to laying out, improving and constructing a road, public or private, have been complied with; but is whether there has been such an acceptance of it as a way.

A decree will be made giving appropriate relief and requiring the defendant to pay all the costs of the cause.

NOTE.    On appeal the decree was affirmed. *Post p.* 389.