[No. 25847. Department One. April 1, 1936.]

C. W. CORNING *et al., Appellants,* v. JOHN ALDO *et al., Respondents.*[1]

*Colvin & Rhodes,* for appellants.
*W. A. Beakley,* for respondents.

STEINERT, J.—Plaintiffs brought this action to recover damages for trespass upon land claimed to be owned by them and for the destruction of a fence which they had erected thereon, and also to obtain a permanent injunction against further trespass. The defendants alleged in their answer that a strip of ground, included within the land claimed by plaintiffs, and across which the fence extended, was a public road, and thereupon sought recovery of damages from plaintiffs for wrongful issuance of a preliminary restraining order against them and special damages resulting from the original construction of the fence. Upon a trial before the court, all claims for money damages were mutually waived by the respective parties, and the cause proceeded to hearing upon the issue of ownership and the right to the use of the strip of ground across which the fence had been constructed. The court found for defendants and entered a decree dismissing the complaint and declaring the particular strip of ground to be a public road. The plaintiffs have appealed.

The appellants and respondent John Aldo own adjoining lands, appellants' land, consisting of about ten acres, being immediately north of the land of Aldo. Both properties are contiguous, on the west, to Hood Canal, an arm of Puget Sound. Respondent Lars Halverson originally owned both tracts as a part of a homestead claim.

A gully, beginning at the shore of Hood Canal, extends in a southeasterly direction through the land claimed by appellants, crosses their south line, and proceeds in the same general direction across Aldo's land, ending at or near a road running east and west along the southerly line of, and within, the Aldo tract. The length of the gully, within the limits of the land claimed by appellants, is about four hundred fifty feet. Its width and depth do not specifically appear from the record.

Within the gully, from the beach to the south line of appellants' land, and probably to a point further south, is a well-defined but somewhat devious trail, or path, about four feet in width. For more than twenty years, this trail has been used by the public to gain access to the beach from the territory lying to the south and east. The trail has not been used, nor is it capable of being used in its present condition, for vehicular traffic, except that, on occasions, Aldo has used a horse-drawn sled over it for the purpose of hauling water from a well located on appellants' land and in which Aldo has some kind of interest. At certain points, the trail, within the boundaries of the land claimed by appellants, has been dug out of the side hill and widened, in order to make it easier of passage. Particular mention is made here of the gully and trail because they form the basis of this lawsuit.

At this point, we shall refer, in chronological order, to four written instruments affecting the title to appellants' land. These instruments have an important bearing upon the issues of this case.

On August 26, 1915, respondent Lars Halverson and wife, then owners of certain lands in the particular vicinity, and Andrew Aasen and wife, at that time owners of what now includes appellants' land, entered into a "roadway right-of-way agreement," by the

terms of which each of the parties thereto granted to the other, for a stated consideration and for roadway purposes only, the use of seven strips of ground of varying lengths and widths within their respective properties. One of these strips, having a width of twenty feet, runs along the course of the gully in question. The agreement contained this very pertinent provision:

"All of said parties also grant unto the General Public the right and privilege to use the above described property from now on and forever for public roadway purposes only."

This agreement was placed of record after the execution of the agreement next referred to herein.

Thereafter, on June 25, 1916, Aasen and wife entered into a written contract with appellants by the terms of which the Aasens agreed to sell, and the appellants agreed to buy, ten acres according to the following description:

"The North Ten (10) acres of the South Twenty (20) acres of Lot One, Section Four, Township Twenty-six (26) North, Range One (1) East W. M. Containing ten (10) acres, more or less. Reserving the use of a strip twenty feet wide along the East side for public roadway purposes *and reserving an easement of ten feet wide in the bottom of the gully, for private roadway purposes.*" (Italics ours.)

The gully mentioned in this contract is the one to which we have previously referred.

On June 13, 1918, Aasen and wife deeded to appellants, in fulfillment of the above contract:

"The North Half of the following described Tract: Lot No. One (1), Section No. Four (4), Township No. Twenty Six (26) North, Range No. One (1) East, Willamette Meridian, except the North Eight (8) acres, and *less* Twenty feet (20) off the East End and *a strip of twenty feet across said Tract in a North-Westerly direction, following a draw to the beach.* Being ten

acres, more or less, according to the Government Survey of above described land.'' (Italics ours.)

It is conceded that the ''draw'' mentioned in the deed is the same as the gully above referred to. It will be observed, also, that while the contract reserved only ''an easement of ten feet wide in the bottom of the gully, for private roadway purposes,'' the deed actually excepted from the grant to appellants, ''a strip of twenty feet across said Tract in a North-Westerly direction, following a draw to the beach.''

On May 16, 1935, which was just two days prior to the commencement of this action, the appellants obtained a quitclaim deed from the Aasens to the ten acres described in the above deed, but without any reservation or exception of the twenty-foot strip within the draw or gully.

After appellants had obtained their contract from the Aasens, they improved the land by the construction thereon of a house and certain out-buildings. The property was used by them mostly as a summer residence. In the meantime, Aldo, who in 1921 had become the owner of the tract to the south of appellants, had improved his land by the construction of a residence, a barn, and a chicken house thereon. It seems that the chicken house originally stood within the twenty-foot strip in the draw, or gully, extending through Aldo's land. Across the gully was a wire fence, which was so constructed as to enclose the chicken house.

In January or February, 1935, appellants built a fence along their south line and across the path within the draw. At the point where the draw enters Aldo's land, appellants placed a gate in the fence. Appellants conceded at the trial that they did not thereby intend to terminate or exclude the usual traffic over the trail

entirely, but merely to require it to pass through the gate.

After the fence had been constructed by appellants, Aldo moved his chicken house back from the twenty-foot strip and changed his fence in such a way as to make a lane of equal width through the draw upon his land. After that had been done, Aldo and the other respondents herein entered upon appellants' land, tore down the gate, removed several posts, and leveled off the ground within the twenty-foot strip for a short distance down the gully as it extended across the land claimed by appellants. Thereupon, this action was brought.

The question to be determined is whether the twenty-foot strip within the gully or draw in which the path, or trail, runs is, or is not, a public roadway. Upon the determination of that question depend the rights of the respective parties to this lawsuit.

We may at once eliminate from consideration any question concerning the establishment of a county road in the conventional manner prescribed by Rem. Rev. Stat., § 6447-1 [P. C. § 5992-2], et seq. There were, in this case, no proceedings taken before the county commissioners, either by resolution or by petition, as prescribed by those sections of the statute.

We may also concede, for the purposes of this case, that a public road was not established under the provisions of Rem. Rev. Stat., § 6494 [P. C. § 6016], which requires that the road be used for a period of not less than seven years, and that the road be worked and kept up at public expense. While the time requirement was fully satisfied, the evidence does not show that the road had been worked or kept up at the expense of the public.

Whether a public highway by prescription alone was created, in this instance, it is not necessary to deter-

mine, although the case of *Thorsteinson v. Largawd,* 155 Wash. 341, 284 Pac. 92, which presents a strikingly similar state of facts, is strongly persuasive, in this case, of a road having been created by prescription. The authorities cited in that case lend further support to that conclusion. However, we are not deciding the case upon that theory.

We rest our decision herein upon two grounds, (1) that, under the evidence disclosed by the record, a public roadway was created by dedication and acceptance, and (2) that the title to the twenty-foot strip in the gully never vested in the appellants at all.

Prior to the time that appellants contracted to purchase the land, their grantors had, by a written instrument, dedicated the twenty-foot strip here in question to public use, by granting to the general public the right and privilege to use the same forever, for public roadway purposes. That instrument, though not of record at the time that appellants entered into their contract with Aasen, was of record at the time that they took their deed in fulfillment of the contract. Moreover, at the time that appellants contracted to purchase the land, they knew of the existence of the pathway and its continuous use. Pursuant to the dedication of the twenty-foot strip by its owners, the public continued to use the same, as it had previously done, for the purposes indicated. That use has continued to the present time.

Dedication originates in the voluntary donation of the owner or seller, and when the intention of the owner to dedicate is clear, manifest, and unequivocal, whether by a written instrument or by some act or declaration of the owner manifesting his clear intent to devote the property to public use, it becomes effective for that purpose. *Shell v. Poulson,* 23 Wash. 535, 63 Pac. 204. There can be no question in this case that

the dedication of the twenty-foot strip for use by the general public for roadway purposes was intentional, clear, and unequivocal.

User by the public following dedication constitutes an acceptance of the dedication. User, if actual and continuous, need not be for any fixed time, because it is not a matter of prescription merely, but one of acceptance of the grant. *Okanogan County v. Cheetham,* 37 Wash. 682, 80 Pac. 262, 70 L. R. A. 1027. In the present case, we have an actual and continuous user from the beginning to the present. We have, then, intentional dedication followed by actual and continuous user. A roadway thereby became established.

The other ground of our decision is equally conclusive upon appellants. It, also, rests upon the facts already stated. The deed which appellants took in fulfillment of their prior contract did not convey to them the twenty-foot strip in the draw or gully, but expressly reserved it from conveyance. The quitclaim deed taken by appellants just shortly before the trial did not improve their situation so far as this case is concerned. Whatever they took under the latter deed was, of course, subject to any incumbrances then existing on the land and all rights which had been previously granted respecting it. Besides, they then took with full knowledge of the conditions as they existed at that time. The dedication had been made, had for years been of record and had been accepted by use on the part of the public.

Contention is made by appellants that even if there had been a public road established, it had become vacated by nonuser. But, as we have already stated, the use by the public was continuous from the beginning to the end. The fact that Aldo had at one time obstructed the road upon his premises by building a chicken house within its limits and had con-

structed a fence across it, both of which were later removed, did not affect the acceptance of the roadway by the public, nor its legal right to use it. In any event, the roadway through appellants' land was never obstructed, but was continuously and uninterruptedly used by the public, until appellants themselves erected the fence.

The decree of the court was proper and will, therefore, stand affirmed.

MILLARD, C. J., MITCHELL, TOLMAN, and GERAGHTY, JJ., concur.