[No. 29750. Department Two. August 9, 1946.]

R. E. LOOSE, *Respondent and Cross-appellant*, v. ELMER LOCKE *et al.*, *Appellants*.[1]

[1]Reported in 171 P. (2d) 849.

*Harry H. Johnston,* for appellants.

*J. Peter P. Healy* and *A. L. Garnes,* for respondent and cross-appellant.

ROBINSON, J.—This suit involves the title to a strip of land, thirty feet in width, extending through the southwest quarter of the northeast quarter of section 14, township 17 north, range 2 E. W. M., in Pierce county, Washington. Plaintiff sought a decree requiring defendants to remove certain fences erected across the strip and to recover damages. Both plaintiff and defendants claim title to the strip.

It is admitted that, in 1912, one Booth was the owner of the entire northeast quarter of section 14. December 24, 1912, he and one Flint and wife conveyed to Douglas F. Arnot and Frederick P. Arnot, by warranty deed, the southeast quarter of the northeast quarter of section 14, reserving for public road purposes a strip thirty feet wide along the west end of the north half of the north half of the north half of the southeast quarter of the northeast quarter of section 14. The deed further provided:

"The grantors herein also warrant and convey to the grantee herein and to the general public for road purposes, a strip of land 30 feet wide along the south side of N½ of N½ of N½ of SW¼ of NE¼ of Sec. 14, Twp. 17, R. 2 east of W. M."

A county road extends along the west side of the southwest quarter of the quarter section.

In 1926, the Arnots conveyed to Loose, the plaintiff, the southeast quarter of the northeast quarter of section 14, without any specific reference to the thirty-foot strip of land extending through the southwest quarter of the quarter section to the county road. April 11, August 29, and September 27, 1944, they executed quitclaim deeds quitclaiming to plaintiff all interest in the thirty-foot strip.

The Lockes, the defendants, own a tract of land abutting the thirty-foot strip on the south side, the full length thereof. Title is derived through mesne conveyances from Booth and Flint. None of the conveyances in defendants' chain of title to this tract makes any specific reference to the thirty-foot strip in question. In all of the conveyances, this tract south of the thirty-foot strip is described as the south half of the north half of the north half of the southwest quarter of the northeast quarter of section 14. The Lockes are also purchasing from one Basy a tract of land abutting the thirty-foot strip on the north side, the full length thereof. Title to this tract is deraigned through mesne conveyances from Booth.

In all of the conveyances, except the first, some eight in number, the property is described as the north half of the north half of the north half of the southwest quarter of the northeast quarter of section 14, less a strip of land thirty feet wide along the south side of said tract (the strip of land in controversy). In the first conveyance, from Booth to Marsh, executed April 29, 1912, the property is described as five acres along the north side of the southwest quarter of the northeast quarter, "less 30 feet along the south side of said five acres." April 5, 1944, Basy executed a quitclaim deed quitclaiming to Locke all interest in the thirty-foot strip in controversy. May 26, 1944, Locke obtained from Booth a quitclaim deed to the thirty-foot strip in controversy. The Lockes also claim title through alleged adverse possession by Basy and payment of taxes by Basy for more than ten years.

The evidence shows that for many years (since some time prior to 1926) a wire fence has existed along the south side of the thirty-foot strip in question, the full length thereof. The evidence also shows that for many years a wire fence has existed along the north side of the strip, but not the entire distance thereof. This fence, in places, extended into the thirty-foot strip. The end posts, however, are thirty feet distant from the south edge of the strip. This fence was erected by Basy for the purpose, as he testified, of using the lane as a cattle lane.

The evidence also shows that for many years a fence has existed along the county road in front of the properties owned by Locke and Basy, with a gate opening into the thirty-foot strip. The Lockes and Basy testified that long ago, prior to 1926, there was a picket fence extending across the strip without any opening into the county road. Bloom, who owned the Basy property between 1929 and 1935, testified that, when he came there, there was a wire fence extending across the strip without any gate opening into the county road, and that he put in the gate. He owned a herd of cattle which he pastured on land which he leased from the plaintiff.

The evidence shows that the plaintiff has used the thirty-foot strip as a means of ingress and egress to and from his forty acres in the southeast quarter ever since he acquired the property in 1926. No controversy whatever arose over the ownership of the strip until after Lockes purchased the property north of the strip from Basy, and then only because the plaintiff continually threw open the gate.

Mrs. Locke testified:

"Everybody that lived on that place, only the Blooms and Beirings and Gordons, I think, everything was hunkydory, that gate was closed all the time, but as soon as Mr. Locke and I bought the place, open went the gate."

It is admitted that the road has never been accepted by Pierce county, or any other public authority, and that no public funds have ever been expended in the improvement or maintenance of the road.

The evidence shows that, shortly prior to the institution of the suit, the defendants nailed up the gate at the west end of the strip where it enters the county road, erected a wire fence across the east end, plowed up the soil, and planted it to alfalfa.

The trial court held that the deed from Booth to Flint did not convey to the grantees, Arnot, the fee simple estate, but only an easement of passageway over the land. The decree of the court requires the defendant to remove the fences erected by them across the road, but permits them to maintain a gate across the strip at the west end where it enters the county road, and also a gate across the east end. It also denies plaintiff recovery of any damages.

■ We think the judgment of the court that the deed from Booth and Flint to the Arnots did not pass the fee estate is erroneous. The deed, by its terms, conveyed the land itself, not a mere right to pass over land owned by the grantors. It is a well-settled rule in this and other jurisdictions that a deed which, by its terms, conveys the land, conveys the entire estate in the land, even though it may designate, or even restrict, the use to which the property may be put by the grantee. *Aumiller v. Dash,* 51 Wash. 520, 99 Pac. 583; *Soukup v. Topka,* 54 Minn. 66, 55 N. W. 824; *Lintner v. Office Supply Co.,* 196 Wis. 36, 219 N. W. 420; *Vail v. Long Island R. Co.,* 106 N. Y. 283, 12 N. E. 607, 60 Am. Rep. 449. See, also, *Greene v. O'Connor,* 18 R. I. 56, 25 Atl. 692, 19 L. R. A. 262.

■ It is not necessary in this case to determine if the deed conveys the fee estate, the nature of that estate, whether a fee simple absolute, base or qualified fee, or a conditional fee. The authorities are unanimous to the effect that the owner of a base or qualified fee has all the rights of an absolute owner so long as the event which is to terminate the estate has not occurred. *Aumiller v. Dash, supra; Halvorsen v. Pacific County,* 22 Wn. (2d) 532, 156 P. (2d) 907; 1 Tiffany, Real Property (3d ed.) 383, § 220.

■ The evidence in this case shows that the property has been used by the plaintiff and others for road purposes, and that that use has never been abandoned. Were it not for the language contained in the granting clause of the deed "and

the general public," we think there could be no question but that, under the authorities above cited, the conveyance passed the fee estate to the Arnots. What, then, did the parties intend by inclusion of the words "and the general public"? It would seem that the general public is incapable of being the grantee of an estate in land. The general rule is that a deed is void if the grantee is not a legal entity. See Patton on Titles, 647, §§ 183 and 184. But a grant to the general public may operate as a dedication of the property to public use. *Meeker v. Puyallup*, 5 Wash. 759, 32 Pac. 727; *Corning v. Aldo*, 185 Wash. 570, 55 P. (2d) 1093; *Cincinnati v. White*, 31 U. S. 431, 8 L. Ed. 452; *New Orleans v. United States*, 35 U. S. 662, 9 L. Ed. 573.

It is also a well-recognized rule that, where land is dedicated as a public road, it is not necessary that there should be an acceptance thereof by any public authority. *Okanogan County v. Cheetham*, 37 Wash. 682, 80 Pac. 262, 70 L. R. A. 1027; *Seattle v. Hinckley*, 67 Wash. 273, 121 Pac. 444.

Nor is it necessary to show that the road has been used by any considerable number of persons. It is sufficient to show that those persons who might naturally be expected to enjoy it have used it to their pleasure or advantage. *Reinhardt v. Chalfant*, 12 Del. Ch. 214, 110 Atl. 663; *Phillips v. Stamford*, 81 Conn. 408, 71 Atl. 361, 22 L. R. A. (N. S.) 1114; *Taraldson v. Town of Lime Springs*, 92 Iowa 187, 60 N. W. 658.

Nor is it necessary that public funds should have been used in the improvement or maintenance of the road. *Corning v. Aldo, supra; Reinhardt v. Chalfant, supra; Phillips v. Stamford, supra; Carpenter v. Gantzer*, 164 Minn. 105, 204 N. W. 550; *Keiter v. Berge*, 219 Minn. 374, 18 N. W. (2d) 35.

In our opinion, the conveyance from Booth and Flint to the Arnots passed the fee estate in the land to the Arnots, subject to an easement in favor of all persons having occasion to use the strip for road purposes to do so. It follows from this that the plaintiff, as owner of the dominant estate,

has the right to insist that the road be kept open, free from any obstructions whatsoever.

■ There is no evidence whatever that Basy ever had color of title to the strip, was ever in exclusive possession of the property, or ever claimed title to the strip by adverse possession or otherwise. The strip was not segregated from the north 165 feet of the southwest quarter on the tax rolls of the assessor's office, and Basy paid the taxes assessed upon the north 165 feet of the southwest quarter; but the mere payment of taxes upon the property which included the thirty-foot strip did not pass title to the strip.

We also think that the evidence shows that plaintiff sustained more than nominal damages by reason of the acts of defendants complained of. There was no other road he could use as a means of ingress or egress to and from his property, and it was necessary for him to travel over rough and swampy ground and crawl under wire fences in order to reach the county road. He testified that, on one occasion, a lady came out to see him, and turned back and returned to town on account of the fact that the gate was nailed up. In our opinion, the evidence shows that Loose, the plaintiff in the action, has sustained damages in the sum of at least two hundred dollars. But this is said merely by way of suggestion. It is, of course, the function and province of the trial court to fix the amount.

The decree of the trial court is reversed on plaintiff's cross-appeal, and the cause remanded for entry of a decree in accordance with the views herein expressed.

BEALS, C. J., BLAKE, and JEFFERS, JJ., concur.

---

September 21, 1946. Petition for rehearing denied.