127 A.2d 607 (1956)
Joseph T. SINGEWALD, Jr., Carl Singewald, H. Elmer Singewald, Quentin D. Singewald and Joseph T. Singewald, Jr., Carl Singewald, H. Elmer Singewald, Quentin D. Singewald, Trustees under the will of Joseph T. Singewald and Carl Singewald, executor under the will of Joseph T. Singewald, and The State of Delaware, Plaintiffs,
v.
Rhoda B. GIRDEN, Defendant.
Court of Chancery of Delaware, Sussex.
November 26, 1956.
*609 W. Howard Thompson, Georgetown, for plaintiffs, other than the State.
Daniel J. Layton, Sr., Special Deputy Atty. Gen., for the State of Delaware.
Houston Wilson, Georgetown, for defendant.
SEITZ, Chancellor.
Plaintiffs seek a mandatory injunction directing the defendant to remove a cottage which, according to plaintiffs, her predecessors in title placed in what was later made the bed of a public street in a seashore development known as "Dewey Beach". The defendant claims that she owns the property on which her cottage is located by reason of adverse possession or, in any event, there are other defenses to the action.
Based upon an earlier opinion in this case by then Vice Chancellor Bramhall certain defenses were stricken but it was decided that because of the existence of a factual issue concerning ownership of land, that issue should be referred to a Superior Court jury. See Singewald v. Girden, 33 Del.Ch. 51, 107 A.2d 231. However, no order of reference was entered on that opinion. Thereafter the State of Delaware was added as a party plaintiff and also filed its own complaint. The complaints are here considered together. The original plaintiff died and the trustees and executor of his estate were substituted. Use of "plaintiff" herein will refer to the original plaintiff unless otherwise indicated.
Plaintiffs have moved for summary judgment on the ground that they are entitled thereto on the basis of the undisputed material facts added to the record since the then Vice Chancellor filed his opinion. Defendant contends that there are still relevant facts in dispute. This is the decision on plaintiffs' motions.
The following diagram showing generally the present status of the area involved may be helpful to an understanding of the problem:
*610 
*611 A rather elaborate chronological narration of facts is necessary. Defendant's original predecessor in title in about 1908 placed a cottage on the public lands of the State of Delaware here involved.
In 1913 the Legislature passed an Act creating a Public Lands Commission for the State of Delaware and gave that Commission control of all the public lands of the State. 27 Laws of Del. Chap. 5. The Commission purportedly took control of the land in the area which embraces the land now claimed by the defendant.
On May 6, 1913, the Commission published notices that it was about to survey the public lands and notified all persons claiming to hold such lands to make their claims known at once to the Commission. It does not appear whether defendant's predecessor filed a claim; presumably not, since defendant relies upon adverse possession, thereby tacitly conceding original title in the State.
In August 1914, the Commission passed a resolution by which they noted their decision to lay off and plot in building lots a section which includes the land in dispute. By this resolution, the streets were to be 100 feet wide.
In October 1914, Morgan T. Gum, a surveyor, made a report to the Commission and also submitted a pencil drawing of an area, which included the land now in dispute. The Commission's minutes show that Gum's drawing was approved. Indeed, it formed the descriptive basis for the subsequent sales.
The Commission fixed August 14, 1915, as the date for the sale of the lots laid out in the area here involved. The posters used to advertise the sale of these lots contained a reproduction of the Gum Plot on a smaller scale. The posters showed the house of defendant's predecessor to be located at the easterly or ocean end of McKinley Avenue but within the bed thereof. It also recited as follows:
"Each lot is 75 feet by 150 feet and fronts on an Avenue one hundred feet wide."
At the meeting of the Commission the day before the sale, a delegation of persons occupying some of the aforementioned State land appeared before the Commission; it appearing that there were about 25 buildings in this area of the land plotted by Gum. They were advised by the Commission that none of the occupants of said land would be removed from their existing site until such a time as objection to their occupancy was made by some owner of land in the plot to be offered for sale. However, on the present record it must be assumed that defendant's predecessor in title did not appear at that meeting.
At the sale the following day, the plaintiff, Singewald, purchased lots 2 and 4 in Section 3 on McKinley Avenue. He received a deed for such property in 1916 which was recorded in 1927. Said deed makes reference to the Gum Plot and describes plaintiff's lots as abutting on McKinley Avenue.
In 1917 the State Highway Department was created and given general supervision and control over all State highways. 29 Laws of Del. Chap. 63, 17 Del.C. § 101 et seq.
In 1925, the Commission conveyed the southeasterly 70 feet of the area shown on the Gum Plot as Dagsworthy Avenue, being 100 feet wide, to one John Wedderburn. He owned certain abutting lots. Dagsworthy Avenue is the next parallel street to the north of McKinley Avenue. The seventy feet conveyed left a 30 foot street from Ocean Boulevard to the beach.
In 1928, the Commission by resolution recited that the 1914 plot made by Mr. Gum was never officially approved by the Commission. At that time the finished drawings of the area as prepared by Mr. Pepper were approved. While substantially similar to the Gum Plot they presumably corrected certain minor errors on the Gum Plot. I *612 do not believe this action has any present legal significance because I think the 1914-15 action of the Commission was a clear approval of the portion of the Gum Plot covering the area in question.
The Gum Plot showed McKinley Avenue laid out 100 feet wide running in a northeasternly direction between Ocean Boulevard (King Charles Avenue) and the Atlantic Ocean. McKinley Avenue is open for use by pedestrians and vehicular traffic from Ocean Boulevard to almost the westerly boundary of defendant's cottage. At the time the Gum Plot was prepared the cottage now belonging to defendant was located about 150 feet to the east of its present location but within the bed of McKinley Avenue and within the area presently claimed by defendant. It was moved 75 feet inland sometime between 1913 and 1920 and an additional 75 feet shortly after 1920. Plaintiffs dispute these facts concerning the movement of the cottage and the land involved but since they are so asserted by defendant they must be taken to be true for purposes of the present motions.
In 1929, supervision of public lands was taken from the Commission and turned over to the State Highway Department. 36 Laws of Del., Chap. 2, 7 Del.C. § 4506 et seq.
In 1935, all county roads, so-called, were brought under the care, management and control of the State Highway Department. 40 Laws of Del., Chap. 107, 17 Del.C. § 131.
Initially, the State Highway Department was joined as a defendant for the alleged reason that it had refused to join as a plaintiff against the individual defendant. Upon the appearance of the State as a plaintiff, the Department was dismissed as a defendant in 1954. However, prior to its dismissal, the Department in its answer admitted that the defendant's cottage, while located within the boundaries of McKinley Avenue as originally laid out, nevertheless, was east of that portion of the Avenue which was maintained and improved by the Department. It further admitted that McKinley Avenue was used as a public street eastwardly as far as it had been improved and maintained by the Department, but beyond that point to the east it was not in use as a public street; that the point of furthermost improvement was west of defendant's cottage; and the Department would not improve McKinley Avenue further towards the east than it was then improved, even though defendant's cottage were not involved. Moreover, in answer to interrogatories, the Department conceded that it did not know when or by whom McKinley Avenue was opened as a highway; that it was then open for use by vehicular traffic to within the "proximity" of the defendant's cottage, and from that point eastwardly it was used by pedestrians only. These matters will be accepted as fact for purposes of the present decision. However, the State offers to file an affidavit of the Chief Engineer of the State Highway Department to the effect that McKinley Avenue is a public street throughout its length and breadth as plotted under the supervision of the Public Lands Commission; that the Department had no intention of vacating McKinley Avenue in any part; and that, subject to this decision, the remainder of the street would ultimately be permanently improved. The Court, in order to bring this already too long delayed matter to a head, declined to permit the filing of the affidavit which was tendered well after the Court took the case under advisement. Were it of decisive importance the Court would take a different view of the matter. In any event, if accepted it might create a question as to whether it was consistent with the earlier answer of the Highway Commission.
In 1930, plaintiff wrote to defendant's father, who was her predecessor in title, saying, inter alia:
"I bought my lots as abutting on the street [McKinley Avenue] 100 ft. wide, which is of course part of the property value of the lots. As a matter *613 of legal right, I am entitled to have the street bed open and unobstructed back to King Charles Avenue.
"Appreciating your situation, I have during all these years made no objection to your occupancy of the street bed, altho it would have been an advantage to me to have the wider clear space.
"It is, of course, evident that when the beach is developed, which will probably be within the next few years, it will be necessary for you to remove your cottage from the street bed. In the meantime, as far as I am concerned, I shall be glad to see you continue to enjoy your present location.
"Since however, I have been obliged to move again at heavy expense, it is only a sensible regard for my own interests and property rights not to allow any obstruction of the portion of the street bed directly abutting on my lots. In case of any infringement upon my rights in this regard, I would take effective action to clear the street bed back to King Charles Avenue."
Some years ago another cottage was moved onto the bed of McKinley Avenue directly north of the defendant's cottage. It does appear that plaintiff owns lots 6 and 8 on the south side of McKinley Avenue. From the easterly end of the vehicular roadway to the beach there existed for many years only a footpath which lies between defendant's cottage and the cottage to the north. What the earlier situation was is far from clear.
Plaintiffs claim that they are entitled to judgment based on the following reasoning: Undisputedly, the land claimed by defendant was originally public lands belonging to the State; 7 Del.C. § 4502, permitting adverse possession to run against the State with certain exceptions,[1] does not defeat the State's claim because the land is covered by the statutory exceptions; or, even if not within the statutory exception, the land claimed by defendant was dedicated and accepted as a public road prior to the running of adverse possession against the State, and that dedication has not been lost by subsequent events.
Defendant contends that the land claimed by defendant is not "beach or shore" within the meaning of the statutory exception and consequently adverse possession could run against the State; that there was no dedication of the land in question for a public street or road; that there has never been any acceptance of the land in question for a public street or road, by user or otherwise; that even if there were a dedication and acceptance, it was subsequently abandoned, or estoppel and laches are involved. Further, as to those suing in the right of the original plaintiff, Singewald, the defendant contends that, in any event, there has been no showing of a special injury distinct from that of the general public. Further, as to the State, the defendant contends that it should be left to pursue the criminal remedy provided by 17 Del.C. § 503.
I assume without deciding that the land claimed by defendant was not within the statutory exceptions provided in 7 Del.C. § 4502 and thus was of the type which could be acquired by adverse possession. I therefore first consider whether all of McKinley Avenue was dedicated and accepted as a public street before the running of the 20 year adverse possession period. If it was, then the adverse possession question as such is removed from the case.
Defendant's first contention is that the statute, 27 Laws of Del., Chap. 5, creating the Public Lands Commission did not give the Commission the power to dedicate or accept any public road in the state. Defendant points out that Section 6 of *614 that statute provides that, "The said Commission is hereby authorized to survey and lay off such public highways through any such land as they may deem advisable and for the public good". Defendant calls attention to the fact that the statute only authorizes the Commission to "survey and lay off" public highways. She emphasizes that it does not explicitly authorize their dedication or acceptance by the Commission. Under Section 4 of the Act the Commission was authorized to divide the lands into tracts of 50 acres or less and to sell such tracts subject to conditions deemed to be for the public good. There can be no doubt that the Commission had the power to lay off the lots in the area here involved and to survey and lay off public highways to serve such lots. It seems an almost necessary implication from such power that the Commission was empowered to dedicate the public highways which it laid off. Otherwise, although the lots were sold as abutting on designated public highways, such lot holders would have no guarantee that the areas laid off for public highways would in fact be available for such use. Such a captious intention cannot be attributed to the Legislature.
Defendant points to a statutory history concerning the power to dedicate, maintain, etc., public highways. This shows that other agencies were granted power to open public roads, etc. However, these statutes are not inconsistent with the statute specifically dealing with public lands. A specific statute must here be accorded recognition over more general statutes. Nor is the fact that the Commission was not given power until 1927 to construct public roads inconsistent with an existing power to dedicate a road for a public highway. Construction of the road is not a necessary prerequisite to an effective dedication of a public road.
I conclude that the statute creating the Commission empowered it to dedicate and accept as public highways the public lands surveyed and laid off by it for public highways.
Defendant next contends that there is a factual dispute as to whether the Commission intended to dedicate the land in question. Defendant first attempts to throw doubt upon the regularity of the proceedings by the Commission in connection with the sale of the lots here involved. I find no basis for such doubt. The record shows clearly and undisputably what took place.
Defendant next points to certain actions by the Commission which she says throws doubt upon the Commission's intention to dedicate that portion of McKinley Avenue claimed by defendant. Defendant argues that this evidence raises a factual dispute which cannot be resolved on the present motion. However, defendant confuses a "factual dispute" with a dispute as to the proper inference to be drawn from undisputed facts.
Defendant first points to the fact that the Commission, just before selling the lots according to the Gum Plot, stated for the benefit of the then occupants of the public land to be sold, that they would not be required to move from their existing locations until such time as there was objection to their occupancy by a lot owner. Defendant says that since her predecessor in title was then an occupant of the public lands the foregoing statement of the Commission is evidence against a factual intent to then dedicate the land occupied by defendant's predecessor. Was such action inconsistent with an intention then to dedicate the entire bed of McKinley Avenue as shown on the Gum Plot?
The original plaintiff purchased his lots from the Commission pursuant to a plot which showed his lots as abutting on McKinley Avenue. Indeed, the sale posters stated and thus the sales were made on the representation that each lot abutted on a 100 foot wide Avenue. The purchasers were entitled to rely on this substantial and authorized representation of *615 a State agency. The gratuitous concession by the Commission to the "squatters" on the State land that they could stay until objection was made by a lot owner is, under these circumstances, certainly not evidence of an intent not to dedicate. At best it was but an attempt to minimize the injury to persons admittedly encroaching on State lands.
Nor is defendant helped by arguing that the Commission's action evidenced such an intent at least with respect to so much of McKinley Avenue as was occupied by her cottage. I say this because, by defendant's own admission, she has moved her cottage at least 75 feet westward on McKinley Avenue since the action by the Commission in 1915. Thus, McKinley Avenue was dedicated at least to the point where defendant's cottage is located, or McKinley Avenue was not dedicated at all. I cannot believe the latter alternative is true. I pass over the fact that defendant's predecessor is assumed not to have had knowledge of the Commission's statement to the "squatters".
I do not believe this action by the Commission is evidence of an intention not to dedicate the land claimed by defendant.
Defendant also contends that the action of the Commission in 1925 in deeding a fee simple title to the southerly 70 feet of Dagsworthy Avenue (the next parallel street to the north of McKinley Avenue) to the owner of the abutting lots shows that there was no intention to dedicate the land claimed by defendant. First of all, it is not shown that this action could not have been taken legally even had there originally been an effective dedication. Next, and most important, the action of the Commission in 1925, whether legal or not, cannot prejudice rights established by virtue of action taken and representations made in 1915 in connection with the sale of lots on McKinley Avenue. I conclude that the 1925 action of the Commission cannot be used to show an intention by the Commission not to dedicate all of McKinley Avenue in 1915.
Defendant states that no objection was made by plaintiff or other landowners to the occupancy of the site in question by the defendant or her predecessor in title. Nor, according to defendant, was any notice to vacate the site ever served upon the defendant or her predecessor by the State, acting through the Public Lands Commission, or the State Highway Department, or otherwise, until the State joined in this action. Plaintiffs appear to dispute the facts set forth in this paragraph but for present purposes they must be taken to be true. The fact that, as defendant contends, no objection was raised to her occupancy until this action was commenced, is not sufficient to show a lack of intention in 1915 to dedicate all of McKinley Avenue. Had the building situation along that "street" been rather well established a different situation might be presented. However, in 1914-15 the only cottages on McKinley Avenue were those located on the easterly end of the Avenue on the beach front lots. Whether defendant's evidence is pertinent to other defenses will be considered hereinafter.
The proof is uncontroverted here that the Commission plotted the land in question and delineated on the map which they used for making sales, a street designated as McKinley Avenue. This Avenue admittedly embraced all the area claimed by defendant. The deed to plaintiff recites that the land was sold by reference to the recorded Gum Plot and McKinley Avenue was one of the boundaries shown on that plot. The intent to dedicate seems clearly proven. As the Maryland Court said by way of dictum in Mullan v. Hochman, 157 Md. 213, 145 A. 554, 557:
"The rule is firmly established in this state, and supported by the overwhelming weight of authority elsewhere, that when a person subdivides property in a city and lays down on a *616 plat thereof, made or adopted by him, lots shown as bordering streets and alleys delineated upon the plat, and then sells any of the lots with reference to the plat, he thereby dedicates the streets upon which the sold lots bind, to the public."
See also 26 C.J.S., Dedication, § 23, p. 440; 1 Elliott on Roads and Streets (4th ed.), § 21.
This conclusion is no less true because the State is the seller and because a beach front development is involved.
Defendant also suggests that the State is "picking" on her. She says there are other owners of cottages in her position yet no action has been taken against them. It would of course be the height of public immorality for the State not to accord similar treatment to all similarly situated. I am, however, unwilling to assume that the State will not do so in due course. In any event, such an argument cannot help the defendant here.
Defendant correctly points out that one of the necessary elements for a complete dedication is an acceptance. She attempts to show that there has been no acceptance for she says that McKinley Avenue is used as a public street from King Charles Avenue eastwardly only as far as it is improved. East of such point (defendant's cottage is east of that point) the street is not used as a public street. From this premise she contends that there never has been an acceptance by public use of McKinley Avenue throughout its entire length, citing Johnson v. Town of Watertown, 131 Conn. 84, 38 A.2d 1. But is public user the only type of acceptance possible?
The court in the Johnson case did state that the two elements of dedication are intent by the owner to dedicate land for public use and acceptance by the public. However, it is well known that while some type of acceptance is necessary, it need not be acceptance by the general public. There can be acceptance by action of public authorities. See 11 McQuillin, Municipal Corp., § 33.47. Defendant contends that there has been no such acceptance. What are the facts?
When a state makes a plat of its own land and publicly sells lots as abutting on streets shown therein, the same authority which makes the dedication, by the same act accepts it on behalf of the public. The dedication and its acceptance are in the same acts. See Reilly v. City of Racine, 51 Wis. 526, 8 N.W. 417.
I conclude that the requisite acceptance of the dedication of all of McKinley Avenue appears.
Defendant also contends that there has been an abandonment of the portion of the street claimed by her. Generally speaking, an abandonment of a public road does not result from mere nonuse after a dedication is complete, unless a statute so provides. Something affirmative must be shown. 11 McQuillin on Municipal Corps. (3rd ed.), § 33.78. However, abandonment is a question of fact, Reilly v. City of Racine, above, and based on the conflicts and inadequacies of the record I believe the decision concerning abandonment must await a trial. Of course, a party cannot acquire title by adverse possession to a public highway solely because there has been no objection or interference by the State for 20 years. See Miller v. Town of Seaford, 22 Del.Ch. 159, 194 A. 37; compare Allender v. Mayor, etc., of City of Wilmington, 7 Pennewill 48, 76 A. 610.
Defendant says there has been no showing of special injury to the individual plaintiffs. Assuming without deciding that this is so, how does it matter if the State is entitled to the relief requested?
Defendant says the State should be left to pursue its criminal remedy under 17 Del.C. § 503. That remedy is admittedly not exclusive. While Harlan & Hollingsworth v. Paschall, 5 Del.Ch. 435, shows *617 the need for restraint in the exercise of equitable jurisdiction, I believe this is an appropriate case for equitable intervention because of the types of problems presented. Surely defendant should not object where plaintiffs have elected to pursue a civil remedy rather than attempt to have her branded as a criminal.
Defendant next argues that plaintiffs are barred by equitable estoppel or laches. I shall not stop to differentiate between these two defenses at this point. A majority of courts do recognize that a public body may be equitably estopped to proceed against a party occupying a portion of a public road. Compare Mullan v. Hochman, 157 Md. 213, 145 A. 554; 171 A. L.R. 94. Laches may also be applied against public authority. Compare City of Pittsburgh v. Pittsburgh & W. V. Ry. Co., 283 Pa. 196, 128 A. 827. However, both are applied with less rigidity against public authority.
Proceeding on the premise that the defenses of laches and equitable estoppel are applicable, I now consider the facts. I have reviewed the record at length and I believe its confused and contradictory state prevents a determination of these issues at the summary judgment stage. For example, the position of defendant's predecessors in title as against the State and the individual plaintiff is far from clear. Were defendant and her predecessors misled by the alleged inaction of the State and plaintiff? What is the fact about the movement of defendant's cottage? Did defendant make substantial improvements on her cottage?
Since the facts concerning defendant's defenses of abandonment, equitable estoppel and laches are disputed or confused in the record, I conclude that plaintiffs' motions for summary judgment must be denied and these matters resolved after trial by this Court. I see no need for a reference of these issues to a jury.
In order to "salvage" the matters here decided, an order will be entered under Rule 56(d), Del.C.Ann. Compare Abercrombie v. Davies, Del.Ch., 125 A.2d 588.
If counsel believe there are facts stated herein which are not in the record they should be called to my attention.
Order on notice.
NOTES
[1] This statute was repealed effective July 15, 1953. See 49 Laws of Delaware, Chapter 386. This repeal concededly has no application to this case.