JOSEPH S. DURR,
Plaintiff,

*vs.*

LEE R. HART, LAWRENCE M. HIMES, DOROTHY M. HIMES, PETER PIUNTI, CELESTINE PIUNTI, ED ROARK, GRACE ROARK, Defendants.

*New Castle, March 18, 1959.*

*Elwood F. Melson, Jr.,* Wilmington, for plaintiff.

*Julian D. Winslow,* Wilmington, for defendants.

SEITZ, Chancellor: The plaintiff, a lot owner in a development known as DuRoss Heights, brought this action on his own behalf and on behalf of residents of DuRoss Heights and the traveling public generally to enjoin the defendants from closing off and obstructing a portion of the bed of a 30′ wide strip shown on the recorded plan of such development. Plaintiff's lot is not contiguous to such strip. The strip extends from Airport Road to at least a point a little more than half way between King and Queen Avenues extended. These roads are parallel to Airport Road and are, respec-

tively, the second and third roads back from Airport Road. The first such road is called "Strawbridge Avenue". The plan shows this 30' wide strip as abutting on certain lots at one end of the development. The lots between Airport Road and Strawbridge Avenue which abut on the strip show setback markings. The strip has marked therein the word "Reservation".

The plan also shows a strip roughly 20' wide. It is parallel and contiguous to a portion of the strip marked "Reservation". It also extends back from Airport Road but only to approximately Strawbridge Avenue. It has written therein the words, "Present Lane". It is agreed that the space contained within the lines identified as "Present Lane" was not and is not a part of DuRoss Heights. I mention it only to avoid the possible confusion which may arise because of the juxtaposition of the words "Reservation" and "Present Lane".

The plaintiff's deed contains a provision giving him "the free and uninterrupted right, use and privilege together with others entitled thereto forever of the streets, and avenues on the aforesaid Plan of DuRoss Heights for highway purposes".

The recorded plan of DuRoss Heights dated August 25, 1937, contains the following certification by the owners:

> "It is hereby certified that the undersigned is the owner of the land shown on this and that such streets, lanes and avenues as are hereon shown are dedicated for the general use of the traveling public and for the use of the abutting property owners."

The defendants, who have blocked the area marked reservation, have done so on the basis of quitclaim deeds to such area recently acquired from the same persons who were grantors of plaintiff's deed.

This is the decision after final hearing.

Plaintiff, by letter of his counsel of January 26, 1959, to defendants' counsel, abandoned any claim to an easement by prescription in what I shall hereinafter refer to as the "strip". In any event, I

am satisfied from the evidence that the strip was not being used as a road by the public twenty years prior to the time the complaint was filed.

■ Plaintiff asserts the right of the public, including plaintiff, to use the strip on either of two theories. He first says there was a public road easement created by grant. He next argues that there was a dedication and acceptance of the strip for a public road.

I first consider whether the strip was subject to an easement by grant. I am satisfied that the use of the word "Reservation" in the original plan is affirmative evidence that the grantors did not intend at that time to create a public road thereon by grant. No other contemporaneous evidence is sufficiently strong to alter this conclusion.

I next consider whether or not plaintiff proved a dedication and acceptance of all or any portion of the strip by action or events taking place after the plan was recorded.

■ Since plaintiff did not prove use of the road for a period going back twenty years prior to the commencement of the action, I agree with defendants that the plaintiff may not rely upon mere usage to prove the necessary dedication. Compare *State v. Brown, 6 Boyce* 179, 29 *Del.* 179, 97 *A.* 590. Consequently, plaintiff must show a dedication in fact. See *State v. Reybold, 5 Harr.* 484.

■ No particular ceremony is necessary to evidence a dedication if the assent of the owner is shown and the use has in fact been for the purpose intended by the dedication. See *State v. Reybold,* above; *Johnson v. Stayton, 5 Harr.* 448. As Tiffany says in 4 Tiffany, *Real property,* 3rd ed., § 1101:

> "A dedication need not be by any formal act or declaration and it is sufficient if in any way the owner of the land indicates an intention to devote the land to the public use. The act of dedication is affirmative in character, and the intention to dedicate must be clearly shown, as must also the purpose or use for which the land is given. A mere nonassertion of his rights by the owner does not establish a dedication. * * * The existence

or non-existence of the intent to dedicate in any particular case is a question of fact rather than of law."

One preliminary matter must be noted. The common grantors were named Ryan. However, all parties dealt only with Mr. DuRoss, who is Mrs. Ryan's father. I think the facts show beyond doubt that for our purposes at least, the matter must be decided as though Mr. DuRoss were the grantor.

The first issue here then is whether upon the basis of the entire record the intent to dedicate was clearly shown.

 The evidence showed that in 1938 the strip was taken off the tax rolls. Since the area had theretofore been assessed in the name of the grantors it is only reasonable to assume that it was taken off at their request. This is of course pertinent to show an intent in fact to dedicate. Compare *Village of Benld v. Dorsey,* 311 *Ill.* 192, 142 *N.E.* 563. Mr. Duoss (here treated as common grantor) dumped materials into a portion of the strip between Airport Road and Strowbridge Avenue so as to make it passable. The facts show that various lot owners worked on portions of the strip to make it passable. This must have been known to Mr. DuRoss.

██ It is also clear that for many years commencing after the plan was recorded various landowners in DuRoss Heights and the public generally used the strip at least from Airport Road to Strawbridge Avenue, and they used it with great frequency. The use of course would not itself be sufficient to show an intent to dedicate but it was so open and notorious that it must have been known to Mr. DuRoss and this a factor consistent with an intent to dedicate. It is also of some moment to note that the strip was only 30' wide and was really too small for a building lot. It is also of some interest that the plan showed "Building Restriction Lines" on the lots abutting on the strip between Airport Road and Strawbridge Avenue. This fact, in conjunction with the narrowness of the strip, suggests that the future use of the strip for a road was possibly contemplated.

There is some slight evidence that the Ryans doubted their full title to the strip because they gave only a quitclaim deed. Compare 4 Tiffany, *Real Property* (3rd ed), § 959.

I am therefore satisfied that the evidence clearly shows an intent on the part of Mr. DuRoss and therefore the Ryans to dedicate some of the strip for a public road. I further conclude that this intent came into being subsequent to the approval of the original plan. In reaching my conclusion I do not rely on statements attributed to Mr. DuRoss, who is deceased.

In view of the facts narrated above I do not believe the intent was rendered doubtful by the subsequent recording of plans similar to the original plan. In fact, the defendants who are adversely affected by this decision lived for several years on lots abutting on this strip before they acquired the quitclaim deeds here involved. They must be held to have been aware of the facts concerning the use of the strip. Nor is the matter rendered doubtful even though the State Highway Department refused to accept it as a public road in later years because it was not of a width of 50'. Nor is my conclusion altered by the fact that this is not the only road giving access to the development.

Having concluded that the evidence clearly shows an intent to dedicate at least some of the strip, the next question which arises is whether there was an acceptance by public user. I am satisfied that the evidence showed a very substantial public user of the strip from Airport Road to Strawbridge Avenue for many years. Indeed, some of the defendants themselves used the strip. It is clear that the use has been much less since the State Highway Department paved the other roads in the development in about 1954. However, it was still used up until the time that the defendants blocked it off.

Even if I assume that the intent to dedicate applied to the strip in its entirety, I am satisfied that the evidence is not sufficiently strong to support the conclusion that there was an acceptance by public user of the entire strip. I conclude that the necessary user is shown only for the area between Airport Road and Strawbridge Avenue. Beyond Strawbridge Avenue the physical condition of the strip and other factors tended to force those entering the strip from Airport Road to either cut across lots in the development or go down Strawbridge Avenue. The evidence as to the possible limited use of

the area beyond Strawbridge Avenue was too doubtful or equivocal to support a conclusion of public acceptance of such area as a road.

I therefore conclude that plaintiff has proved a dedication and acceptance of the 30′ strip from Airport Road to and including the area embraced by Strawbridge Avenue extended. Beyond that point the plaintiff and the general public have not proved any public right to use the strip. I am not called upon to decide whether any individuals have any private rights with respect to such additional area.

An injunction will issue against the defendants owning the area found to be subject to the easement. It will compel them to remove the barricades on the portion of the strip between Airport Road and Strawbridge Avenue extended. Such defendants will also be enjoined from further obstructing that area. If such defendants have placed dirt and rubble on the portion of the lane in question so as to make it impassable for vehicles, they will be required to remove such material.

In order that title searchers may be aware of this decision, a copy of the final judgment should be indexed and recorded in the appropriate chains of title.

Present order on notice.