Fred W. VETTER, Jr. and Phyllis M.
Vetter, his wife, Defendants
Below, Appellants,

v.

The DIAMOND STATE TELEPHONE
CO., a Delaware corporation, Plaintiff
Below, Appellee, Cross-Appellant.

Supreme Court of Delaware.

Submitted: April 14, 1982.
Decided: Aug. 23, 1982.

Thomas C. Jackson (argued) of Terry, Jackson, Terry & Wright, Dover, for appellants.

Douglas B. Catts (argued) of Schmittinger & Rodriguez, P. A., Dover, for appellee, cross-appellant.

Before McNEILLY, QUILLEN and HORSEY, JJ.

HORSEY, Justice:

Defendants, Fred W. Vetter, Jr. and Phyllis M. Vetter, his wife, appeal the Court of Chancery's only ruling after trial that was adverse to them, namely: that a telephone conduit of plaintiff, The Diamond State Telephone Company, that crossed defendants' residential lot beneath ground level was lawfully placed and lay in the bed of an unopened but nevertheless dedicated public alley.

The Trial Court's ruling permitted Telephone Co. to leave in place under defendants' premises a 9 inch telephone conduit or cable crossing lying between 6 and 9 feet below ground. The conduit is part of a main trunk line which provides ongoing essential telephone and telecommunication services to a large number of inhabitants of Kent County. The conduit has been in place for over 50 years—having been installed in 1929 or 1930 with the approval of the City of Dover—and was in place 40 years before defendants' purchase of the improved parcel which is their home.

On these and other facts hereafter referred to, the Court found: (1) the alley to have been a public alley through dedication to its *entire* plotted length; and (2) Telephone Co. to have been granted by the City of Dover a legal franchise, in effect, to install and maintain the conduit in the bed of the public alley, known as "State Street Alley." [1]

However, the Court also found Telephone Co.'s rights created by franchise (rather than easement) to have been substantially diminished by the public utility's intervening inaction. Hence, Telephone Co. was permanently enjoined from entering upon defendants' premises (except with defendants' permission) to service the conduit. The Court thereby limited Telephone Co. to underground access to its conduit from manholes off defendants' premises—provided defendants' surface rights were not disturbed. The Court also rejected Telephone Co.'s alternative claims to have acquired an easement by prescriptive user or by estoppel (if not by grant) for the conduit's underground crossing.

Defendants appeal, seeking nothing less than the removal of the conduit, claiming it to be an impermissible trespass and encroachment upon their fee title to the premises. Telephone Co. has filed a defensive cross appeal limited to the Trial Court's rejection of its prescriptive easement claim and to be abandoned if the Trial Court's public alley franchise ruling is affirmed. We so affirm.

Defendants appeal naturally focuses on the Court's acceptance of Telephone Co.'s franchise grant argument. The linch-pin of the Court's franchise grant ruling [2] was its finding that by 1929, if not before, State Street Alley had been effectively dedicated to public use. Defendants contend that the Court's dedication finding is erroneous "as a matter of law." We understand defendants not to mean that the Trial Court erred in its statement of the law of common law dedi-

---

1. As will be seen, defendants contest both of these findings.

2. The Court does not use the term "franchise"; but counsel appear to agree that that is the effect of the Court's finding of the City's authority to permit installation of the conduit in a public way.

cation but in the Court's application of the law to the facts. Defendants appear to contend that the Court relied on facts that, if not erroneous, were not material to the determination of whether there had been an effective common law dedication of the Alley. Defendants also seek to narrow the issue of dedication by focusing, erroneously we think, upon only that portion of State Street Alley that was plotted to cross defendants' parcel. Defendants thereby ignore the private or public status of the remainder of the Alley and of the other plotted streets of the Subdivision.

Certain findings of fact of the Trial Court are either undisputed or conceded, implicitly if not explicitly:

(1) The chain of title to defendants' parcel goes back to an 1869 or 1870 plot of a residential subdivision known as "Silver Lake City" or "Addition to Silver Lake City" that was recorded in 1871 in the Kent County Office of the Recorder of Deeds and remains of record.

(2) The plot subdivided the land immediately north of the Town of Dover in a grid-type manner into a series of rectangular blocks subdivided into lots with the blocks laid out to front on extensions of three existing Dover streets, "Maine", later State Street, Bradford Street and Governors Avenue, all running in a generally north-south direction.

(3) The plot shows an alley, "State Street Alley", as bisecting the block of subdivided lots that includes defendants' parcel. That particular block of lots is bounded on the east by State Street, on the west by Bradford Street, on the north by Walker Road and on the south by Hall, later Ross Street. The alley as plotted runs parallel with State and Bradford Streets for the entire length of the block between Ross Street and Walker Road.

(4) The alley divides the block into two sets of lots, one fronting on State Street and the other fronting on Bradford Street, with the rear of each group of lots being the alley.

(5) The alley as shown on the plot extends in like fashion through three other blocks of similarly subdivided lots lying immediately to the south of defendants' parcel and between State and Bradford Streets. No similar alley was plotted to bisect the series of north-south lots lying between Bradford Street and Governors Avenue.

(6) Thomas B. Bradford, creator of the subdivision plan and owner of the tract of some 80 acres, died in 1871, a few months before the recording of the subdivision plan and before any out-conveyances had been made pursuant to the plan.[3]

(7) From 1871 to 1911 all deeds transferring title to the land plotted for subdivision were conveyances of the entire 80 acre tract describing the land as a farm and without any deed reference being made to the recorded plot plan of Silver Lake City.[4]

(8) In 1911 first mention was made of the "Silver Lake City" plot in a deed of a block of the numerated lots lying between State and Bradford Streets. Indeed, the parcel so conveyed was the particular block of lots lying between Ross Street and Walker Road that included defendants' parcel.

(9) Between 1924 and 1927 there were further conveyances of the particular block of lots that included defendants' parcel and which likewise "referred to the aforesaid lots as well as to the recorded plot."[5] These conveyances also made express reference to the streets shown on the recorded plot which bounded the block of lots, to wit, "bounded on the East by State Street of said Town [of Dover] extended one [sic]

---

3. As will be seen, defendants rely on this set of operative facts as requiring the Trial Court to rule *as a matter of law* that no intent to make an offer of dedication [presumably of *any* of the plotted ways within the subdivision] could be inferred from the recording of the plan.

4. As will also be seen, defendants rely on this set of operative facts as requiring the Trial

Court to rule *as a matter of law* that any offer to dedicate lapsed or was presumably withdrawn or revoked by reason of the 40 years of inaction as to the subdivision plan between 1871 and 1911.

5. All quotations are from the Chancellor's unreported Opinion, unless otherwise noted.

called Maine Street; on the North by the Walker Road; on the West by Bradford Street of said Town extended, and on the South by a proposed Street once called Hall Street, now called Ross Street, and containing lots designated by the numbers 31, ... on a plat of lots called 'Silver Lake City', laid out by Thomas B. Bradford in the year 1869 and of record...."[6]

(10) However, "[t]here was no development or construction in the area above described" (i.e., the *particular* block of lots of Silver Lake City that includes defendants' parcel) until some later unspecified date.[7]

(11) In 1929 the City of Dover annexed an unincorporated area that included "Silver Lake City"; and shortly thereafter the Dover City Manager, on request of Telephone Co., granted it permission " 'to lay a toll cable underground in what is known as State Street Alley from Walker Road' southerly ... " through the annexed area and into Town to Telephone Co.'s building.[8]

(12) In 1929 or 1930 the conduit was installed within the bed of State Street Alley throughout its plotted length, that is, the opened and used portion of the Alley extending from downtown Dover to the cross street immediately south of Ross Street and through the Alley's unopened section extending from that point to Walker Road. And the conduit has continuously remained there to date, though with additional cables periodically added.

(13) In 1930 the then-owner of the tract of land deeded to the State of Delaware a right of way for an extension of "Governors Boulevard", the effect of which was to slice through the block of lots of Silver Lake City which included the present parcel and to sever the triangular parcel eventually acquired by defendants in 1970 from the remaining lots of the particular block.[9]

(14) The portion of State Street Alley lying north of Ross Street was never opened for use as an alley. However, the *remaining* portion of State Street Alley as plotted and lying south of Ross Street has for many years been opened and used as a public alley (along with the subdivision's other plotted streets, including State and Bradford) and apparently continues to be so used.[10]

On these findings of fact, especially those summarized under paragraphs (1), (8), (9) and (11) above, the Court concluded that there had been a dedication of State Street Alley as a public way "for its full length" as plotted and an acceptance of the dedication by the City of Dover in 1929. Relating what it found to be the pertinent facts to the law of a common law dedication, the Court stated:

**6.** By virtue of the 1911 deed as well as the deeds between 1924 and 1927, defendants were on record notice that their parcel's chain of title went back to the "Silver Lake City" plot and block therein bounded by State and Bradford Streets and Ross and Walker Road *and* that the plotted "State Street Alley" bisected their parcel. Such conveyances between 1911 and 1927 also put defendants on notice of reliance by the particular grantors and grantees on the Silver Lake City plot. Nevertheless, neither defendants' deed in 1970 nor their predecessor's deed in 1960 made any reference to the Silver Lake City plot.

**7.** A 1927 aerial photograph clearly depicts the presence of numerous houses in the southerly portion of the Silver Lake City subdivision as of that date. However, the photograph also confirms that the northern extremity of the subdivision, including the lands lying both north and south of Ross Street, was still vacant and apparently being farmed.

**8.** As will also be seen, defendants rely upon this set of operative facts as requiring the Court to rule *as a matter of law* that the Town of Dover did not validly "accept" any offer to dedicate and lacked the power to do so.

**9.** Governors Avenue became the hypotenuse of a triangular parcel whose other two sides were Bradford Street and Walker Road. It was this parcel which defendants purchased forty years later which carried with it the plotted but unopened State Street Alley.

**10.** The Court's express finding is, "[t]he physical existence of the alley as it runs northerly from downtown Dover stops at its intersection with Ross Street to the south of defendants' property [and] does not continue on to Walker Road as indicated on Bradford's 1869 plot...."

"In *Singewald v. Girden,* Del.Ch., 127 A.2d 607 (1956) it was held that when a person subdivides property and lays out lots on a plot made or adopted by him, showing the lots as bordering streets and alleys delineated on the plot, and then sells 'any of the lots' with reference to the plot, he thereby dedicates the streets and alleys upon which the sold lots bind to the public. And in *Reinhardt v. Chalfant,* Del.Ch. [12 Del.Ch. 214], 110 A. 663 (1920) it was held that by the plotting of land, the recording of the plot, and the conveyance of lots according thereto abutting on the streets shown thereon, the street throughout its length and breadth is dedicated to public use as a highway. Here the evidence shows that over the years there were numerous conveyances of lots abutting on the alley in question as designated on Bradford's recorded plot of Silver Lake City. This constitutes a dedication of the alley for public use for its full length as shown on the recorded plot. The annexation of Silver Lake City into the City of Dover by act of the General Assembly in 1929 did not alter this situation. Upon the annexation of new territory a municipality takes such public ways in trust for the public...

\* \* \* \* \* \*

It is true, as defendants argue, that a dedication to public use is not complete in the absence of an acceptance. It has also been held that in the absence of action by the public authorities, the only evidence of acceptance of a street that can be asserted is public user. *Reinhardt v. Chalfant, supra.* But there can be acceptance by act of the public authorities. *Singewald v. Girden, supra.* Here there has clearly been at least one act of acceptance by the public authorities. Spe-cifically, in 1929, the City of Dover, acting through its City Manager, expressly granted the request of the Company and gave it permission to bury its utility conduit in the bed of the alley to the full extent of its recorded length. The City, by this act if no other, clearly indicated that it considered the alley, as shown and dedicated by virtue of the recorded plot, to be a public alley within its dominion and control.

On the evidence I find that there clearly was a dedication of the alley for use as a public way and an acceptance by the authorities of the municipality in which it was located, <u>including that recorded but apparently unopened portion of the alley which crossed the area in question to Walker Road.</u>

From this it follows that the Company had lawful authority to install the conduit in 1929 or 1930 as the case may be, and accordingly it did not require a deed of easement from anyone in the defendants' chain of title at the time in order to enable it to do so." *Diamond State Telephone Company v. Vetter,* Del.Ch., C.A. No. 563 (Unreported Opinion, February 18, 1981). (underlining added for emphasis).

The Court also rejected defendants' argument that any offer to dedicate had either been revoked or withdrawn or had lapsed before any acceptance of the offer.[11] Treating defendants' argument collectively as a claim of "abandonment" of a public way, the Court found no "clear intention to abandon ... the portion of the alley here in issue ..." by the City of Dover. But the Court also noted that since the City was not a party to the action, the issue could not be resolved against the City's interests.

\* \* \*

11. Defendants never explicitly state whether their "revocation" argument extends to all of the plotted streets and ways of Silver Lake City, or is confined to State Street Alley to its entire plotted length, or is limited to only that portion of the Alley lying north of Ross Street. But for the purposes of this litigation, the argument must be limited to the latter, i.e., the Alley within the short block north of Ross Street that includes defendants' premises. Such a limited application of its "revocation" argument reveals, we think, its inherent weakness. For no contention is made that Bradford and State Streets, as well as all intersecting or cross streets within the subdivision, as well as the Alley south of Ross Street, have not become public ways.

On appeal, defendants contend that the Trial Court's ruling must be reversed for error "as a matter of law." In contrast, plaintiff contends that this Court's scope of review of the Trial Court's legal franchise ruling is a "clearly erroneous" standard permitting reversal only if the findings of the Trial Court were clearly wrong. In support of their contention that the Trial Court committed "legal error" in ruling that State Street Alley north of Ross Street had been effectively dedicated as a public way, defendants make essentially three arguments: (1) that the evidence of an offer to dedicate [all(?) of the ways of Silver Lake City as public ways] was insufficient as a matter of law because of the developer Bradford's death in the year of recording of the subdivision plan and before *he* had made any lot sales pursuant to the plot plan; (2) that if an offer to dedicate had been made, it was withdrawn, revoked or lapsed, as a matter of law, before any action constituting a legal "acceptance" occurred;[12] and (3) that the Town of Dover's action in 1929 was ineffective to constitute an "acceptance", as a matter of law, for: (a) failure of the City to put the northerly end of the alley (above Ross Street) to its originally intended use—as a surface way; and (b) for lack of authority of the City Manager (i) to accept the dedication "offer" and (ii) to grant Telephone Co. permission to make its installation in the bed of State Street Alley.[13]

The question whether State Street Alley, including the portion thereof lying north of Ross Street, ever became a public way through a common law dedication is a mixed question of fact and law. On the law there is no dispute between the parties as to the legal requirements for an effective common law dedication of ways within a recorded subdivision plan; that is, the requirement of an offer to dedicate and an acceptance of the offer. *Compare, Fulton v. Town of Dover,* Del.Ch., 6 A. 663 (1886)

and *Singewald v. Girden,* Del.Ch., 127 A.2d 607 (1956). *Fulton* held that a street was dedicated through the recording of a survey map showing the street, followed by sale of lots with reference to the recorded plot plan. *Singewald* held that dedication of a private way as a public street required two elements: intent of the owner to dedicate and public acceptance of such intent, either through public user of the way or action by public authorities. The Court stated:

"... [I]t is well known that while some kind of acceptance is necessary, it need not be acceptance by the general public. There can be acceptance by action of public authorities. See 11 McQuillen Municipal Corp., § 33.47." 127 A.2d at 616.

*McQuillen* explains that an acceptance may be either express or implied, and arrived at in one of several ways: "... (1) by expressed act; (2) by implication from the acts of municipal officers; and (3) by implication by the public for the purposes for which the property was dedicated." 11 *McQuillen Municipal Corporations,* § 33.47 (3d Ed. 1977). In *Poole v. Commissioners of Rehoboth,* Del.Ch., 9 Del.Ch. 192, 80 A. 683 (1911), it was held that an acceptance of a private way for public use did not require any particular ceremony and could be accomplished either through an express or a constructive dedication. There, acceptance of a dedication offer was found through public user. In *Reinhardt v. Chalfant,* Del. Ch., 12 Del.Ch. 214, 110 A. 663 (1920), the plotting of land, the recording of the plot and conveyance of lots abutting on streets shown on the subdivision plan constituted a dedication to public use of the plan's streets to their entire length as public ways.[14] *See also, Hart v. Durr,* Del.Supr., 154 A.2d 898 (1959). As stated in *McQuillen:*

"There need be little affirmative action to indicate an intention to accept a dedication. So there need not be any affirm-

---

**12.** Here, defendants are presumably applying their revocation/lapse argument to State Street Alley *to its entire plotted length.*

**13.** Here, defendants are clearly limiting their revocation/lapse argument to the portion of the Alley lying north of Ross Street. However,

logically, the argument would apply to the Alley to its entire length.

**14.** The Court did not impose any further requirement for an effective dedication by way of an explicit "acceptance" of an offer to dedicate.

ative action on the part of the municipal authorities.

To constitute an acceptance the property dedicated need not be in the actual use or occupation of the public." 11 *McQuillen Municipal Corporations* § 33.47.[15]

The disagreement between the parties is, in reality, over the application of the law to the facts. Thus, defendants, in urging that the Trial Court's findings are to be judged by a legal error guideline, are in essence urging that the Trial Court relied on findings that are not material to the "dedication" issue. But materiality is a mixed question of fact and law involving application of a legal standard to a *pertinent* set of facts. *See, TSC Industries, Inc. v. Northway,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), cited in *Dower v. Mosser,* 3d Cir., 648 F.2d 183 (1981). Thus, the question of whether State Street Alley—within the confines of defendants' parcel—ever became a public way through a common law dedication is neither solely a question of law nor a question of fact but a mixed question of fact and law. The question then is whether the Trial Court's State Street Alley "dedication" finding rests on substantial material facts, as Telephone Co. contends, or on findings of fact that are immaterial and hence clearly erroneous, as defendants, in effect, contend. We conclude that the Trial Court's dedication findings are based on substantial material evidence and hence should be affirmed.

We take up the first asserted ground for reversible error, that is, whether Bradford's death before recording of the plot plan and his failure to make any conveyance under the plan required the Trial Court to rule that no intent to dedicate the plotted streets and alley as public ways could be inferred as a matter of law.[16] The Trial Court did not explicitly deal with this contention in that it did not focus upon Bradford's death and failure to make lot sales. Rather, the Court simply found that the act

of subdivision, recording and sale of lots with reference to the recorded plot was sufficient to constitute a dedication to the public of the ways binding the lots. (See quoted portion of Opinion below at pages 9, 10 above.)

■ We are not impressed by the sparse and generalized textual authority relied upon by defendants as supportive of defendants' position. While defendants' inference is a plausible one, clearly the Court was not bound over 100 years later to conclude solely on the basis of documentary evidence that an intent to dedicate was lacking. Given these circumstances, there was sufficient evidence to support the dedication and evidence that Bradford's death did not work a withdrawal of any intent to dedicate. As stated in *Durr v. Hart,* Del. Ch., 150 A.2d 316, *aff'd,* Del.Supr., 154 A.2d 898 (1959), " '[t]he existence or nonexistence of the intent to dedicate in any particular case is a question of fact rather than of law.' " 150 A.2d at 318. *See also,* 26 C.J.S. *Dedication* § 60 (1956); 4 Tiffany, *Law of Real Property* § 1107 (3d Ed. 1975).

■ Defendants next argue that the operative facts summarized in paragraph (7) above (the absence of any land transfers by reference to the Silver Lake City subdivision plot from 1871 forward) required the Court to rule that the lack of any evidence of "acceptance" of the offer to dedicate before 1929 worked, as a matter of law, a lapse, withdrawal or revocation of the offer. Defendants assert the time interval to be nearly 60 years or from 1871 to 1929, not 40 years, thereby tacking on the additional intervening years between 1911 and 1929. The contention fails for several reasons. *First,* it ignores the several recorded conveyances between 1911 and 1927 of the very block and lots of the subdivision that lie within defendants' chain of title. (See paragraphs (8) and (9) above.) *Second,* defendants overlook the fact of development

**15.** Both parties cite with approval this section in *McQuillen.*

**16.** As stated above (see footnote 11) this amounts to an "all or nothing" argument by

defendants, in the sense that to accept it would require a finding that none of the plotted ways of the subdivision were effectively dedicated. Of course, defendants do not urge this result.

having occurred in at least the southerly portion of Silver Lake City by 1927. (See footnote 7 above.) The weight of the evidence from at least 1911 forward suggests that lot purchasers constituting the public at large were indeed relying upon the Silver Lake City plot to make lot purchases by reference to the plotted streets and ways. Thus, assuming a 40 year hiatus in activity within the subdivision between 1879 and 1911 (see paragraph (7) above), events from 1911 forward preclude the drawing of any inference, certainly as a matter of law, that any offer to dedicate had indeed been withdrawn, revoked or lapsed before the Town of Dover's annexation of the area in 1929.[17]

█ Further, the law is fairly clear that mere passage of time will not bar acceptance of an offer to dedicate unless the offer is expressly time-conditioned. *See, Singewald v. Girden, supra; Velasco v. Goldman Builders, Inc.,* N.J.Super. A.D. 93 N.J.Super. 123, 225 A.2d 148 (1966); *Marwell Const. Co. v. Mayor and Board of Aldermen,* R.I. Supr., 61 R.I. 314, 200 A. 976 (1938); *DiCioccio v. Town of Wethersfield,* Ct.Supr., 146 Conn. 474, 152 A.2d 308 (1959). The law is generally stated to be that, "[a] dedication must be accepted within a reasonable time and what is a reasonable time is to be determined by the consideration not merely of the time elapsed but of the need and convenience of the public and all other pertinent facts and circumstances." 11 *McQuillen Municipal Corporations* § 33.55 (3d Ed. 1977).

Finally, defendants' argument overlooks the alternative findings-ruling by the Trial Court that "the evidence shows that over the years there were numerous conveyances of lots abutting on the alley in question . . . [and] . . . [t]his constitutes a dedication of the alley for public use for its full length as shown on the recorded plot." The Court thereby relied upon *Singewald v. Girden, supra,* and *Reinhardt v. Chalfont, supra.*

The Court's ruling is also consistent with general principles of dedication to the effect that acceptance of an offer to dedicate may be accomplished "by implication by the public" as well as by the alternative means already cited above.[18] 11 *McQuillen Municipal Corporations* § 33.47 and cases cited at page 882 above. *See also,* 26 C.J.S. *Dedication* § 58 (1956), stating:

"*Dedication by sale with reference to plat.* There is a split of authority as to whether a dedication by sale of land with reference to a plat . . . is revocable. According to the weight of authority a dedication of land for public use effected by platting and the sale of lots with reference thereto is, in the absence of statute providing for annulment, a completed and irrevocable dedication, even though there has been no formal acceptance by the public authorities, or the property is not, or cannot, at once be subjected to the uses designated, or for a considerable period of time only a part of the land designated is used, or can be used. Neither the lapse of time nor the act of a municipal government can waive the public right to take possession of a street or highway so dedicated, since the legislature alone has the power to release the dedicated land and to discharge the public servitude. The view taken by many decisions is that the purchase of a single lot is sufficient to perfect the dedication.

However, in some jurisdictions it is the rule that the mere making of the sale of lots with reference to a map or plat does not constitute an irrevocable dedication to the public, but amounts to a mere offer of dedication, which may be withdrawn if not accepted by the public within a reasonable time; and that the platting and sale of lots constitute a dedication of the streets and alleys delineated on the plat only as between the grantors and purchasers. It follows that the dedication can be revoked prior to acceptance,

---

17. A further reason to reject the contention is the lack of any record evidence of intent by the then-owner to seek to rescind or withdraw the subdivision plan between 1871 and 1911.

18. *See* footnote 14 above, questioning the requirement under any circumstances of an explicit "acceptance" of an offer to dedicate to accomplish a dedication of plotted streets as public ways.

provided the claims of grantees are extinguished, or they all consent...." (footnotes omitted) (underlining added for emphasis).[19]

For the purpose of this case, we need not decide if Delaware follows the majority or the minority common law [20] rule on whether there can be a revocation of a dedication of ways for public use where a purported dedication is accomplished by the fact of a recording of a subdivision plot and subsequent lot sales. *Compare, Singewald, supra,* with *Whilden v. Richie,* Del.Ch., 203 A.2d 617 (1964). Suffice it to say that on the record before us the evidence was clearly insufficient to support a ruling as a matter of law that the offer to dedicate had been revoked, withdrawn or lapsed before the Town of Dover's annexation and other action undertaken in 1929, for the reasons stated at pages 883–884 above.

Lastly, defendants contend that State Street Alley north of Ross Street did not become a public way in 1929 because the evidence of the Town of Dover's "acceptance" of that portion of the Alley as a public way was insufficient as a matter of law.[21] The argument, of course, presumes the requirement of an explicit "acceptance" for the accomplishment of an effective dedication of a public way. The argument also assumes that the Court below erred as a matter of law in ruling, on its finding of State Street Alley as plotted to have been dedicated as a public way, that the dedication extends to its full plotted length. See the Court's ruling and discussion of Delaware authorities at page 881 above.

Defendants' argument is in part evidentiary and in part legal. It is evidentiary in

that defendants argue that there is no evidence that the Town ever intended to open the portion of the Alley north of Ross Street. It is legal in that defendants contend that the Town's City Manager lacked the authority first to accept dedication of the Alley (to its entire plotted length) and second, to grant Telephone Co. permission to lay its conduit within the bed of the Alley to its full plotted length.[22]

■ As to defendants' contention that there is no evidence the Town ever intended to open the Alley north of Ross Street, defendants argue that this lack of municipal intent is patent or demonstrable by the failure of the Town at any later date to open the Alley north of Ross Street. Defendants thereby employ 20–20 hindsight by using post-1929 facts—that the Alley was never later extended north of Ross Street—as confirming a 1929 municipal intent that the Town at time of annexation of the subdivision never intended to open the Alley north of Ross Street. Such after-the-fact inferences were clearly insufficient to support a conclusive presumption of municipal intent not to "accept" (assuming acceptance was required) a dedication of State Street Alley to its full plotted length. Defendants' case authorities are simply inapposite.

■ Turning to the legal issues, we think the Court properly applied Delaware dedication law in ruling that the "numerous conveyances of lots abutting on the alley in question ... constitutes a dedication of the alley for public use for its full length as shown on the recorded plot." (See pages 9, 10 and 17 above.) Such is clearly the general law as discussed at pages 13–14 above;

19. Curiously, the text does not take a position as to where Delaware stands on this question, or cite any Delaware cases, perhaps due to uncertainty of the current state of Delaware law.

20. Acceptance by a public authority of offers to dedicate ways in subdivisions for public use in Kent County has, since 1967, been governed by 9 *Del.C.* § 4810, enacted by 51 *Del.Laws, c.* 103 (1967).

21. Of course, the Town's authority to permit Telephone Co. to lay its conduit within the bed of the proposed Alley depends upon the alley land having been dedicated as a public way not later than 1929.

22. The argument is also legal in its implicit rejection of the Court's ruling that State Street Alley was dedicated to its *full* plotted length by virtue of the plotting, recording and conveyancing of lots abutting on the streets and alley of the subdivision. See page 881, above.

and defendants have failed to demonstrate the lack of any substantial evidence to support the Court's ruling as applied to the operative facts of this case.

The remainder of defendants' legal arguments center around the City Manager's authority both to accept an offer of dedication and to grant permission to a utility to use the Town's public ways. Defendants argue: (1) that any offer to dedicate was extended only to the public officials of Kent County and not to the Town of Dover and hence the Town was outside the scope of the offer; and (2) assuming the Town was within the scope of the offer of dedication, the Town's authority to accept an offer of dedication *and* to grant a franchise was exclusively vested in the "street committee" of the Town and not in the Town's City Manager.

The Court below rejected both prongs of defendants' "authority" argument on the strength of (a) the Town's 1929 charter grant from the General Assembly authorizing the annexation of the subdivision; (b) a 1914 Town ordinance authorizing public utilities to install utility lines either over or within the rights of way of streets and alleys within the Town's corporate limits; and (c) Town records showing *written* permission to have been granted Telephone Co. by the Town's City Manager "to open the bed of [State Street] Alley north to the southerly side of Walker Road for the purpose of installing telephone conduits and cables." On these facts, the Court concluded: that the Town of Dover had clearly evidenced its intent in 1929 to accept State Street Alley as a public way to its full plotted length; and that "[t]he conduit was lawfully installed pursuant to this authorization" of the Town "acting through its City Manager."

■ Defendants say that this does not answer its contention that the Town of Dover lacked the authority to "accept" an offer to dedicate the ways of the subdivision *and* that the City Manager's 1929 letter exceeded his authority. Technical arguments of this nature clearly do not improve with age, particularly when not raised until

50 years later and in a proceeding to which the City of Dover is not a party. In any event, we think the Court correctly determined the Town of Dover's act of annexation of the subdivision constitutes substantial, if not controlling, evidence of the Town's acceptance of the subdivision's streets and alley as public ways. As the Court below stated:

"Upon the annexation of new territory a municipality takes such public ways in trust for the public, subject to established grades and rights reserved by dedicator, and there are imposed upon [the municipality] the same municipal duties and liabilities in the annexed territory as rest on it with respect to those in the original territory. 62 *C.J.S.*, Municipal Corporations § 76; 56 Am.Jur.2d Municipal Corporations § 56."

As to the City Manager's asserted lack of authority to grant permission to Telephone Co. to lay its conduit within the bed of the Alley, the evidence may understandably be sparse 50 years later as to the circumstances surrounding the issuance of the letter. However, defendants have clearly not established that the City Manager did not obtain the "street committee's" approval before granting Telephone Co.'s request. Defendants have also not overcome the presumption "that public officials discharge their duties and perform the acts required of them by law in accordance with the law and the authority conferred upon them and that they act fairly, impartially and in good faith." *Phillips v. Board of Education of Smyrna School District,* Del.Super., 330 A.2d 151, 154 (1974); *Glisson v. Glisson,* Del.Supr., 237 A.2d 393 (1967); *Shellburne, Inc. v. Roberts,* Del.Supr., 43 Del.Ch. 485, 238 A.2d 331 (1967). *A fortiori* the presumption should apply to action taken over 50 years ago by the city manager of a small municipality.

\*    \*    \*

AFFIRMED.